Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/03/2017 09:09 AM CST

David Patera, appellant and cross-appellee, v.
Jaime Patera, appellee and cross-appellant.

___ N.W.2d ___

Filed January 3, 2017.    No. A-16-338.

1. **Contempt: Appeal and Error.** In a civil contempt proceeding where a
   party seeks remedial relief for an alleged violation of a court order, an
   appellate court employs a three-part standard of review in which the trial
   court's (1) resolution of issues of law is reviewed de novo, (2) factual
   findings are reviewed for clear error, and (3) determinations of whether
   a party is in contempt and of the sanction to be imposed are reviewed
   for abuse of discretion.
2. **Attorney Fees: Appeal and Error.** When an attorney fee is authorized,
   the amount of the fee is addressed to the trial court's discretion, and its
   ruling will not be disturbed on appeal absent an abuse of discretion.
3. **Contempt.** Civil contempt proceedings are instituted to preserve and
   enforce the rights of private parties to a suit when a party fails to com-
   ply with a court order made for the benefit of the opposing party.
4. **Contempt: Words and Phrases.** Willful disobedience is an essential
   element of contempt; "willful" means the violation was committed
   intentionally, with knowledge that the act violated the court order.
5. **Contempt: Proof: Presumptions.** Outside of statutory procedures
   imposing a different standard or an evidentiary presumption, the com-
   plainant in a civil contempt proceeding must prove all elements of con-
   tempt by clear and convincing evidence.
6. **Contempt: Appeal and Error.** An appellate court's review of a district
   court's finding of contempt is only for an abuse of discretion, not to
   determine whether the appellate court would have reached the same
   conclusion based on the facts presented.
7. **Contempt: Costs: Attorney Fees.** Costs, including reasonable attorney
   fees, can be awarded in a contempt proceeding.

   Appeal from the District Court for Lancaster County:
Andrew R. Jacobsen, Judge. Affirmed.

Amie C. Martinez, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellant.

Steven J. Flodman, of Johnson, Flodman, Guenzel & Widger, for appellee.

Inbody and Pirtle, Judges, and McCormack, Retired Justice.

McCormack, Retired Justice.

## I. INTRODUCTION

David Patera appeals from the order of the district court holding Jaime Patera in contempt for failing to follow the court-ordered parenting plan and allowing Jaime to purge the contempt by permitting David to spend an additional 7 days of parenting time with the couple's daughter, Karissa Patera. David argues that the purge order should have required Jaime to let David spend time with both of the parties' children, not just Karissa, and that the district court should have awarded David additional parenting time. David also argues that the district court erred in failing to order Jaime to pay the full amount of his attorney fees.

Jaime cross-appeals, arguing that the district court erred in finding her in contempt, because David gave her permission to deviate from the parenting plan.

Upon our review, we find no merit to either David's or Jaime's arguments, and we affirm the order of the district court.

## II. BACKGROUND

David and Jaime are the divorced parents of Karissa and Joseph Patera. Jaime has primary physical custody of the children, subject to David's parenting time. David is scheduled for parenting time with Karissa and Joseph from Thursday through Tuesday every other weekend. In the summer, David gets an additional 2 weeks with the children. The present dispute revolves around parenting time David missed with Karissa in July 2015.

In July 2015, Karissa attended a softball tournament and a church camp, both of which were out of state. Jaime did not dispute that Karissa's attendance at these activities infringed upon David's court-ordered parenting time. Following his missed parenting time due to Karissa's tournament and camp, David filed an application for order to show cause why Jaime should not be held in contempt for failing to comply with the parenting plan. The court held a trial in the matter, at which both David and Jaime testified. At the end of the trial, David sought parenting time with both Karissa and Joseph for 9 days he claimed to have missed. He also asked to be awarded additional days of parenting time and attorney fees.

The district court found that Jaime had willfully violated the court-ordered parenting plan and held her in contempt. The court sentenced Jaime to 7 days' incarceration. It further ordered that Jaime could purge the contempt by allowing David 1 week of uninterrupted parenting time with Karissa. Lastly, the court ordered Jaime to pay $250 of David's attorney fees.

David filed a motion for new trial, arguing that the court's order was insufficient. David argued that he should have been awarded at least 9 days of parenting time with both Karissa and Joseph for time he missed "with his family together as a whole." David also argued that he should be entitled to additional parenting time beyond the time he missed and that Jaime should be required to pay more of his attorney fees. The district court overruled David's motion for new trial.

David appeals and Jaime cross-appeals from the district court's order finding Jaime in contempt and setting forth the terms by which Jaime could purge the contempt. Additional facts will be discussed, as necessary, in the analysis section below.

## III. ASSIGNMENTS OF ERROR

David argues, restated, that the trial court erred in instituting a purge order that allowed David parenting time with just Karissa, not Joseph, and in not awarding David additional

parenting time. David also argues that the district court erred in ordering Jaime to pay only $250 of David's attorney fees, rather than the full amount he requested.

On cross-appeal, Jaime argues that the district court erred in finding her in contempt, because she relied on David's consent in deviating from the parenting plan.

## IV. STANDARD OF REVIEW

[1] In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which the trial court's (1) resolution of issues of law is reviewed de novo, (2) factual findings are reviewed for clear error, and (3) determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion. *Sickler v. Sickler*, 293 Neb. 521, 878 N.W.2d 549 (2016).

[2] When an attorney fee is authorized, the amount of the fee is addressed to the trial court's discretion, and its ruling will not be disturbed on appeal absent an abuse of discretion. *Gonzalez v. Union Pacific RR. Co.*, 282 Neb. 47, 803 N.W.2d 424 (2011).

## V. ANALYSIS

We will first address Jaime's argument on cross-appeal that the district court erred in finding her in contempt. If Jaime's argument is meritorious, we need not reach David's arguments regarding the purge order.

### 1. Cross-Appeal: Finding of Contempt

Jaime argues that the district court erred in finding her in contempt. Jaime asserts that she deviated from the parenting plan because David had consented to Karissa's attending the softball tournament and church camp during his parenting time. Jaime therefore argues that her violation of

the parenting plan was not willful. We find no merit to this assignment of error.

[3-5] Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party. *Sickler, supra*. Willful disobedience is an essential element of contempt; "willful" means the violation was committed intentionally, with knowledge that the act violated the court order. *Id.* Outside of statutory procedures imposing a different standard or an evidentiary presumption, the complainant must prove all elements of contempt by clear and convincing evidence. *Id.*

The evidence presented at the contempt hearing showed that David and Jaime had discussed Karissa's attendance at a softball tournament in Oklahoma during the latter part of July 2015. The parties agreed that the tournament in question was during David's parenting time. In particular, in April 2015, David wrote, "I am ok with you having them that weekend [of the tournament] if you will trade it for another weekend."

The parties continued to discuss Karissa's attendance at the tournament into mid-July 2015, but did not reach an agreement regarding when David would be compensated for his missed parenting time. On July 14, David e-mailed Jaime and asked for additional details regarding when Karissa was leaving for the Oklahoma softball tournament and when she would return. David also wrote that he was aware Karissa would be attending a church camp in Illinois during another period of his parenting time. David asked Jaime to contact him so they could "make a plan to cover this week [of the softball tournament] and to cover the week for Karissa's church camp."

On July 18, 2015, David e-mailed Jaime again regarding Karissa. David wrote that he had learned from a telephone conversation with Karissa that she was no longer attending the Oklahoma softball tournament, but was planning to attend a different tournament in Minnesota during the same period of time. David proposed a trade of days to compensate for his

missed parenting time with Karissa during her attendance at the new softball tournament and the church camp. Later that day, David e-mailed Jaime again and stated, "If you will not trade the days for Karissa's softball tournament then she is not going."

On July 20, 2015, Jaime e-mailed David and offered to let him have Karissa and Joseph for 2 days, or to take them to dinner one night. It appears that this exchange did not occur, and Karissa attended the softball tournament and church camp.

On July 30, 2015, David e-mailed Jaime and requested additional parenting time with Karissa and Joseph for the time he claimed to have missed. David attached a timeline which indicated that he believed he lost 4 days of parenting time with Karissa due to the softball tournament and 3 days with Karissa due to the church camp. David also indicated he had missed 2 days with Karissa due to a ski trip, but no additional evidence of a ski trip was presented.

Jaime argues that the series of e-mail exchanges show that David consented to Karissa's attending the softball tournament and church camp. Jaime argues that the situation is analogous to this court's decision in *Belitz v. Belitz*, 21 Neb. App. 716, 842 N.W.2d 613 (2014).

In *Belitz*, the district court declined to hold the mother in contempt for failing to return her child to the father after her summer parenting time. No specific date of return was contained in the court order and the mother and father had ongoing discussions regarding allowing the child to remain with the mother. *Id.* The mother also filed a motion to modify custody after failing to return the child and then complied with the ex parte order requiring her to return the child. *Id.* We affirmed the order of the district court declining to find the mother in contempt. *Id.*

Jaime points out that, just as in *Belitz*, she and David had ongoing discussions regarding trading days in order to allow Karissa to attend the softball tournament and church

camp. However, Jaime's argument ignores important differences between *Belitz* and the present case. In *Belitz*, the district court declined to hold the mother in contempt based on the lack of a concrete return date, ongoing discussions about the child remaining with the mother, and the mother filing to modify custody and complying with the ex parte order to return the child. In contrast, here, the district court *did* find Jaime in contempt, a decision which we are reviewing only for an abuse of discretion. Although there were ongoing discussions regarding a trade of days between David and Jaime so Karissa could attend the tournament and camp, no agreement was ever reached. Furthermore, Jaime was aware that David was missing his scheduled parenting time and that he requested a trade of days in order for Karissa to attend the events in question.

[6] As stated above, our review is only to determine whether the district court's finding of contempt was an abuse of discretion, not whether we would have reached the same conclusion based on the facts presented. See *Sickler v. Sickler*, 293 Neb. 521, 878 N.W.2d 549 (2016). The evidence supports the district court's determination that Jaime's denial of David's parenting time was, in fact, willful. Despite the fact that *Belitz, supra*, also involved ongoing discussions between the parents about changing the parenting time schedule, that case is distinguishable on both its facts and its procedural posture. Given the e-mail communications and Jaime's awareness that David did not intend to relinquish his scheduled parenting time without arranging to trade days, we cannot conclude that the district court's finding of contempt was an abuse of discretion. Jaime's cross-appeal is without merit.

## 2. David's Appeal

Given our determination that the district court did not err in finding Jaime to be in contempt, we turn now to David's arguments regarding the adequacy of the remedy imposed and the amount of attorney fees he was awarded.

### (a) Purge Order

David argues that the district court erred in ordering David to have parenting time with Karissa alone, rather than with Karissa and Joseph together, and in not allowing David additional parenting time as part of the purge order. David does not challenge the court's factual finding that he was deprived of 7 days of parenting time with Karissa. Rather, David argues that when he was deprived of parenting time with Karissa, he missed out on time with his family as a whole, including Karissa's spending time with Joseph and with David's children from his current marriage. David also argues that the court should have awarded him more parenting time than he actually missed with Karissa because such additional parenting time would coerce Jaime into complying with the parenting plan in the future. We find no merit to this assignment of error.

The district court determined, and David does not contest, that David missed 7 total days of parenting time with Karissa only. In fact, David's own evidence, the timeline he e-mailed to Jaime in late July 2015, supports the court's determination that David lost 7 days with Karissa due to her attendance at the softball tournament and church camp. Given that the court compensated David for the amount of parenting time he actually missed with Karissa, we cannot say that its decision not to impose additional parenting time or to order parenting time with Joseph was an abuse of discretion.

### (b) Attorney Fees

Lastly, David argues that the district court erred in ordering Jaime to pay only $250 of his attorney fees. David argues that Jaime should be ordered to pay the full amount of his requested attorney fees, $2,500. We find no merit to this assignment of error.

[7] Costs, including reasonable attorney fees, can be awarded in a contempt proceeding. *Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 782 N.W.2d 848 (2010),

*disapproved on other grounds, Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012).

At trial, David claimed he had missed 9 days of parenting time with both Karissa and Joseph. The court ultimately determined that David had missed only 7 days of parenting time with Karissa, not Joseph, and that David was not entitled to additional parenting time, as discussed above. Given this finding only partially in David's favor, the court's partial award of attorney fees to David was reasonable.

## VI. CONCLUSION

The district court did not err in finding Jaime to be in contempt of the court-ordered parenting plan. Furthermore, the court did not err in ordering that Jaime could purge the contempt by allowing David 7 days of parenting time with Karissa or in ordering Jaime to pay $250 of David's attorney fees.

Affirmed.